This honorable court now stands in session. Please be seated. Case numbers 15-8018 and 8027. Shane M. Haffey, Appellant v. Dutch Bank Trust Company and Samuel K. Crocker, U.S. Trustee, Appellees. Argument not to exceed 15 minutes for the appellant and 15 minutes to be shared by the appellees. Ms. McKeever, you may proceed for the appellant. Good afternoon. Good afternoon. I'm Heather McKeever and I represent the appellate Shane Haffey doing business at Sandland Farms and this dismissal appeal comes out of a Chapter 12 on a family farm. Ms. McKeever, I'm going to need to ask you to speak up just a little bit. Yes, ma'am. Admittedly, this is not a terribly complex case. It may not be terribly interesting. It's been suggested by many people, including the U.S. trustee, that it was without prejudice so it could be refiled. But we do think it's terribly important and that's why we have it in front of you because it goes to the heart of notice, expediation, and due process when a debtor finds himself in some sort of change of circumstance. Go ahead. In a change of circumstance and with a hearing that was set, in this case, on June the 25th and which actually took place as an emergency on June the 2nd without proper notice to the debtor. The debtor had every intention of attending the June 25th scheduled hearing. He had every intention, contrary to the district judge findings, of having a plan of reorganization by then. He had every intention of trying to work with the trustee. He had recently lost... Ms. McKeever, I'm sorry to interrupt, but what would the debtor have said at that hearing that would have made a difference in the outcome of the case? The fact was that there was no amended or new plan of reorganization in effect and the one that was on record was not a viable plan, both in terms of feasibility as illustrated by the debtor's monthly reports and because of the decisions that decided against your client on the validity, the questions of validity of the mortgage. I cannot speak exactly to which issues could or could not have been brought up at the hearing. What I'm asking you to do is to tell me, tell us what the debtor would have stated that would have made a difference or testified to. Yeah, I mean, I'd be presupposing since I didn't represent him at the district court level. I just entered the case at the appeals level, but I do know that based on the record that the trustee at the district court level did have communication with his prior counsel about an amended plan. But there was no plan on file, is that correct? Correct, but there was a... I think the counsel was dismissed at the end of May, maybe May 29th, something like that. There would have been almost a whole month to try to get an amended plan in and to... Because the other thing is, most importantly in this order, I think, goes to the fact that the district court said, found that he has no intention of ever reorganizing, and that certainly wasn't the case. I don't know that there's anything in the record. A plan was submitted, albeit a plan that had no payments in it, but there was a plan submitted. So the core of this issue is whether someone should have the notice and opportunity to actually show up for the dismissal hearing. I don't think that under the rules he was given enough time to even show up to the party. Now, whether the results would have been the same, I mean, I can't say. But the reason we're in front of you all is for you all to determine at what stage is someone entitled under your code and your rules to have the opportunity to show up to the hearing, even if the district court did argue that he wasn't owed an opportunity. But at least he is owed the opportunity to show up and state his case. So that's why we're here. And that brings up kind of the same issue, I think, to some extent, Judge Preston was raising. Okay, assume that your client... There was a procedural due process violation with respect to your client. Let's assume your client did not get proper notice of the hearing, proper notice that the case was going to be dismissed. If we assume that, then there was a, you know, if we assume there was a violation of procedural due process, does your client need to establish harm or prejudice flowing from that violation of procedural due process? That goes to whether or not we're dealing with substantive. I would argue that he's owed substantive due process at that point, not just procedural due process, because he wasn't given any opportunity to be heard, period. Isn't that procedural due process, not substantive due process? Well, if the hearing had been held on June 25th, he would have been able to put something into the record, or at least show up to the hearing. Like, I'm at a bit of a disadvantage because I was not able to actually speak to John Daugherty, who was the trustee, until I got involved at the very end. So, you know, I can't really speak to what would or would not have happened, but I do know that the record shows that they were... that John Daugherty had asked for an amended plan, and that they were supposed to have given him one, and they were discussing about the fact that if he looked... if he liked the plan, and that's the other frustrating thing about the whole situation, is that the creditors have not complained at all in this situation. I know that today Deutsche Bank is here, and they are agreeing with the trustee. I understand that, but they've never raised any of these... the diminution of the estate. They never filed anything negative. I mean, as far as Mr. Haffey knew at the time, his lawyers were working to put an amended plan in front of John Daugherty. Well, okay. Because he was the one who was grousing about the whole situation, not the creditors. So the case got dismissed. Couldn't you... your client just filed a new Chapter 13 with that plan that your client was going to file as an amended plan? He certainly could, and he certainly can today. I mean, I don't... I don't think there's any reason that this all can't be started over from scratch, but the reason that we're here is for you all to discuss and think about something that goes to the core of... especially if you have a pro se litigant, which I know they're unusual in a Chapter 12 or a 13. Well, they're not in a 13, actually, but in Chapter 12, they're pretty unusual. But what happens to that person when they don't get notice? And what is the nature of an emergency? You know, the grounds for the emergency, I just don't see that they were there at all. Well, wasn't your client declining to appear for a deposition? That's not... He didn't say flat-out no, but he made no effort to, as far as I can tell from the record, made no effort to meet the trustee on common ground to effectuate his deposition, which they were entitled to do. Well, I can't... I can't speak to what happened at the district court level, but I can speak to the actual conclusion, which is on page 9 of the order, that he said he didn't have to address... Judge Schaaf said he didn't have to address the deposition issue, that he didn't have to address the trustee's motion for sanctions based on whatever happened with the depositions. He'd made this dismissal simply on 1208C. So that issue was raised by the trustee, but that issue was not part of the order. He said it was moot. But the strange thing is, that motion on the discovery was the grounds to hold the emergency hearing in the first place. So you've got a situation where he was granted an emergency hearing based on an issue that wasn't even brought up... was brought up, but was determined to be moot for dismissing the whole case. Well, wouldn't the court have been within its parameters of its authority to dismiss the case based on the trustee's motion? Not the motion to dismiss, but the motion to dismiss. I can't... I mean, the court is always at liberty to do whatever the court wants to do, but I can't argue one way or the other. I mean, I wasn't there, so... But, I mean, of course the district court's always at liberty, but the district court chose to say that that issue's moot. He believed that he had, you know, a cause to just dismiss the case wholeheartedly. Going back to your point in Judge Humphrey and Judge Preston's comments, assuming that there is a violation of procedure or due process, what would have happened if it was June 25th? What would your client have told the court? Your Honor, I can't... I have no idea what my client would have told the court at that point, but if you go back to... Well, have you asked your client that question? The basis of... I mean, I can't presuppose that. I mean, I can only deal with the record that we have here today since we're in the Court of Appeals. You know, I mean, I can't... I can't presuppose the factual circumstances, but if you go back and compare it to maybe, like, a criminal matter, just because somebody, you know, doesn't get their due process, and we don't know whether the jury will find them guilty the second time around if their due process was dramatic here, and going to the, you know, the far, the far extreme of all of this, that, I mean, whether the results are the same or not should not actually matter to the fact that the opportunity to be heard was not given, and the nature of the... I also want you all to, I'm hoping, write an opinion on the nature of emergency hearings of these natures. Ms. McKeever, it troubles me a little bit that you're suggesting that the court needs to reverse the lower, the trial court on the dismissal, but can't show that there's any prejudice imposed on the debtor here. The prejudice is that how would we ever know what he was going to present? How do we know that he wouldn't have been able to get, to get to come to a meeting of the minds with the trustee, who's the only person who has a problem with all this? But you've come before us, and you say, I can't tell you what the judge, what Mr. Haffey would say at a hearing on the dismissal in there are, there are allusions to the fact that, that Mr. Daugherty was going to engage in an amended plan and possibly withdraw his motion to dismiss. That, that, I'm just basing it on the record. That's all I have. If you have any more questions. I still struggle with the harm to Mr. Haffey in this case, because we pointed out, it's been pointed out some other possibilities, forget those for a second. Again, if he was afforded his right to be heard, either on June 2nd or June 25th, what would he have told the judge in with, I guess, some specifics about the plan? Because that seems to be the tipping point here. There was no plan proposed that was available for anyone to review that those days. So that's, that's what I struggle with. Well, it's, I can't show prejudice, because he never got, he never got a chance to say anything. I mean, if you want me to presuppose things, there could have been a plan that had third-party contributions, because part of what the trustee had a problem with is that he didn't think that he had enough income to support any plan. Well, how, what about third-party, you know, a guy named Bob could have come in and, and financed the entire plan. I mean, or a wife named Heather. Right. So, I mean, you know, that, the fact that he didn't get, the reason this has been appealed and not started from scratch, it could have, I mean, there's an argument, is it more economical to remand and get a plan put in? Because that would be, that would be what would happen if you all remanded this case. A plan would be put in, probably the next day. So, or to start over. But I can't, I can't really concern myself right now with the judicial economy. I'm concerned with the fact that if this is going to happen to many other people. And that's why I'm in front of you all. I'm not here to waste your time. I think it's a really important issue, even though it's not terribly interesting or sexy. But I think it's an important issue going forward, because there are other pro se people out there. Well, I think you're selling yourself short. It's an interesting case. It's just that I struggle with, assuming the procedural due process was not given, what next? And that's where you've added a lot more in the last minute or two, that there would be possibly a plan with third parties. And that's, that's your point. There was never an opportunity for Mr. Hafford to bring those points up, I guess, either the 2nd or the 25th of June. Yes, and there are notes in the record that Mr. Daugherty was willing to consider withdrawing his motion to dismiss if he could just see an amended plan that looked like it could be funded. I mean, he wasn't, he wasn't against an amended plan. I mean, he wasn't going my way or the highway. I mean, he was just waiting to get the plan. Fair enough. Thank you. Thank you. Now you've decided to split your time, right? Yes, Your Honor. Please. Good afternoon, and may it please the Court. My name is Kerri-Ann Roshib, and I represent Samuel K. Crocker, the United States trustee for Region 8, the appellee in this manner. And I will be splitting time with the co-appellee, Mr. Sauer, who represents Deutsche Bank Trust Company Americas. I will be speaking for 10 minutes, and Mr. Sauer will be speaking for 5 minutes on behalf of Deutsche Bank. The United States trustee would ask this court to affirm the decision of the Bankruptcy Court for the Eastern District of Kentucky dismissing Mr. Haffey's Chapter 12 bankruptcy, because the Bankruptcy Court did not abuse its discretion in finding three separate and independent grounds existed to dismiss Mr. Haffey's case. First, Mr. Haffey's unreasonable delay that was prejudicial to his creditors. Second, the continuing loss to and diminution of the bankruptcy estate, which clearly demonstrated that there was no reasonable likelihood of rehabilitation in this case. And third, Mr. Haffey's failure to confirm a Chapter 12 plan. This is a case that at every point has been about delay. Mr. Haffey's attempts to delay the foreclosure proceedings on the South Carolina home, attempts to delay the foreclosure proceedings on the Kentucky farm, and attempts to delay the inevitable dismissal of this Chapter 12 case. This case was filed in April of 2014 on the eve of the foreclosure of the South Carolina property, and Mr. Haffey requested an extension of time to file a plan. There was a five-month delay in filing the first and only Chapter 12 plan that is on the docket in this case. At the hearing on confirmation of that Chapter 12 plan, Mr. Haffey again asked for more time, and he asked for time to avoid the liens of Deutsche Bank and of Bank of America, because the only way the Chapter 12 plan would be successful is if he was able to file adversary proceedings to avoid those liens. The court granted him more time at that juncture, and he did file adversary proceedings to avoid those liens. However, the adversary proceedings were not successful. He voluntarily dismissed the adversary proceeding against Bank of America, and Deutsche Bank was successful in obtaining dismissal of the adversary proceeding against it in the bankruptcy court. The United States trustee filed a motion to dismiss the Chapter 12 bankruptcy case in January of 2015. At that time, the case had been pending for nine months. Mr. Haffey requested a continuance of the United States trustee's motion to dismiss when it was first set for hearing, and the United States trustee originally opposed that continuance, but then due to adverse weather conditions, agreed to allow for a date certain at that time at the continuance of the motion. Subsequent to that hearing, Mr. Haffey filed a motion to stay the entire bankruptcy proceeding, and Deutsche Bank opposed that motion to stay the entire bankruptcy proceeding, as did the United States trustee, and that motion to stay the entire bankruptcy case was denied, and that is what is on appeal as part of this appeal as well. That was the original appeal in this case. And after the denial of the stay, the court set the United States trustee's motion to dismiss for a hearing on June 25th. The United States trustee attempted to reach out to Mr. Haffey's counsel and to Ms. McKeever to schedule mutually agreeable depositions and offered to conduct video conference depositions that would be convenient for Ms. McKeever where they were located at the time. However, the United States trustee did not receive any reasonable response and was facing the June 11th discovery deadline on the motion, and on May 28th, when Mr. Haffey did not appear for his scheduled deposition, the United States trustee filed the motion to dismiss as a sanction and requested the expedited hearing based on the looming June 11th discovery deadline. Was it a motion to dismiss or was it just a motion for sanctions? It was actually a motion to dismiss as a sanction. So there was dismissal contemplated in the United States trustee's motion. In the communications prior to the motion being filed, the United States trustee had indicated to Ms. McKeever and Mr. Haffey that he would seek dismissal as a sanction. And so that motion specifically requested not just general sanctions but dismissal of the case as a sanction. What was it captioned, though? It was captioned Motion to Dismiss Case as a Sanction for Failure to Cooperate with Discovery. And that is docket number 133 in the bankruptcy case. And that motion was emailed to the addresses where the U.S. trustee had communicated with both Ms. McKeever and Mr. Haffey, and it was also mailed to them at their addresses that were on record with the bankruptcy court. That's May 28th? That is May 28th, yes, Your Honor. That is correct. It's unclear to me whether notice of the hearing that was conducted by the bankruptcy court on this motion for sanction, I'm going to call it Motion for Sanctions to Avoid Confusion, whether notice of hearing or notification of the hearing was ever sent to Mr. Haffey. Can you clarify that for me? Yes, Your Honor. The United States trustee gave notice of the motion to shorten time, which did have the exact hearing date in the motion, and also communicated that the hearing would be conducted on that date. It specified that the, did it specify the time? Yes, it did, Your Honor. And did it specify that that was actually the hearing time and date set by the court, and wasn't a proposed? Yes, Your Honor. That's where my confusion lies. Yes, Your Honor. I thought it indicated it was a proposed hearing date. The motion says notice of hearing, please take notice that this motion will be heard by the court on June 2nd, 2015 at 1 p.m. in the second floor courtroom, U.S. Bankruptcy Court, 100 East Vine Street, Lexington, Kentucky. That's docket number 134 on the bankruptcy court's docket. At the time that the hearing was held on June 2nd, the case had been pending for 14 months. The United States trustee's motion to dismiss had been pending for four months. Mr. Haffey's plan that was, that proposed avoiding the liens had been pending for eight months, and it had been four months since the dismissal of the last adversary proceeding with Deutsche Bank in, or with Bank of America, and I believe it was the Deutsche Bank case that was disposed of last versus the Bank of America case. All this time, Mr. Haffey was enjoying the benefit of the automatic stay and living in the Kentucky and South Carolina properties, and his creditors had no resolution and were not getting paid. The bankruptcy court determined that pursuant to section 1208C1, that there was unreasonable delay that was prejudicial to creditors, and that Mr. Haffey was unlikely to reorganize and was instead only engaging in actions to delay the case. Thus, the bankruptcy court properly dismissed Mr. Haffey's case for unreasonable delay that was prejudicial to creditors. The bankruptcy court also found a second ground for dismissal of Mr. Haffey's case, section 1208C9, for continuing loss to or diminution of the bankruptcy estate, and the absence of a reasonable likelihood of rehabilitation. Mr. Haffey had filed monthly operating reports with the bankruptcy court that indicated he had lost money during the course of the bankruptcy case. On a monthly basis, he did not have sufficient income to meet his expenses, and over the course of the bankruptcy case, he had a net operating loss of $1,700, which clearly shows continuing loss to and diminution of the bankruptcy estate. The second part of the test under 1208C9 is whether the debtor has a reasonable likelihood of rehabilitation, and there's no reasonable likelihood of rehabilitation where the evidence establishes that the debtor cannot confirm a plan. The plan that was on the docket was unconfirmable after the adversary proceedings were dismissed against Bank of America and against Deutsche Bank, and also the monthly operating report showed that any plan that provided for payment to either of those creditors would not be feasible because there was not sufficient income to make payments to creditors. Thus, Mr. Haffey did not have a reasonable likelihood of rehabilitation, and so dismissal was appropriate under section 1208. But shouldn't the debtor have had an opportunity? I mean, if it was just a couple of days that the hearing accelerated consideration of the motion to dismiss, I can understand that. But where there was a month between the time the hearing was held and the time of the scheduled hearing on the motion to dismiss, the debtor had a month in which to come up with a plan and propose it. And, Your Honor, the debtor could have come up with a plan, but based on the monthly operating reports, any plan would have not been feasible, and so there would be no ability to confirm the plan even if they presented an alternate plan that provided for payment, because it would not be a feasible plan. What about Ms. McKeever's suggestion that there could have been third-party funding? And, Your Honor, there's no evidence of any of that in the record that those were possibilities, and there's not been any evidence presented that there would be any different finding under the facts presented to the case. But you don't know that because the hearing date was moved up a few weeks. I mean, I understand the frustration that the United States trustee has, but I'm looking for the harm of just waiting a couple weeks to let the debtor tell you all that or tell you nothing. That's what I'm struggling with. And, if I may, I believe that the bankruptcy court had dealt with the case and was very familiar with the case, and the fact that the debtor had not complied and was not taking action that showed a likelihood of compliance, and that this was a case that was really just an attempt to delay. And, with that knowledge, that there was no point in going forward for any further delay in the case, and that at this point there would have been nothing different in the time period that would have been. And the time the court granted the motion on June 6th, and then was when the actual order was entered dismissing the case, and so it would have been the June 25th hearing. But there was nothing that would indicate that things were going to turn around at this point in the case. There was no evidence presented in the letter that was sent by Mr. Haffey to the court, which the court addressed. It was sent on the day of that hearing on June 2nd. And that didn't provide any further evidence that anything different would occur between now and June 25th. Mr. Sauer, you will get your full five minutes, since we are the ones that held up your co-counsel or your associate there. But I have a quick question for you to start off with. What's the status of the foreclosure on Deutsche Banks? It's pending, Your Honor, in the Eastern District of Kentucky. Okay, but pending as in where? Are we on the cusp of a foreclosure sale here, or...? The court has entered a summary judgment foreclosure order in our favor. That case has been stayed under the district court order pending finality of the bankruptcy proceeding. Which means resolution of the appeal as well? Your Honor, we're not entirely sure what the district court intended by that language. But out of an abundance of caution, given the litigious nature of relationship among the parties, we have read it conservatively and have not moved forward with seeking an order of foreclosure sale. So we are waiting for the district court to enter that order. If I could, Judge Preston, I want to go back to the point that I think you first made, which was there's no amended plan in the record, no request to submit an amended plan, no proposal to fix what has now been definitively held to be an unconfirmable plan. And that's, Judge Opperman, you pointed out in the previous case, nobody's talking about the adversary proceeding. I want to talk about the adversary proceeding in this case. Okay. Because I think that's conclusive. You're going to satiate my appetite on the adversary proceeding. Adversary proceedings 14-5044. Right. It's an adversary proceeding that Mr. Heafey brought against Deutsche Bank in this bankruptcy, seeking once again to challenge the validity of Deutsche Bank's lien. And we've had five other cases in the Eastern District of Kentucky go to the Sixth Circuit, back down, that we think conclusively establish the validity of that lien. If there's any doubt about that, this adversary proceeding order that the bankruptcy judge entered on February 2nd of 2015 conclusively resolved it, rejected all of the debtors' challenges to the validity of the lien. That's February of 2015. Now, Mr. Heafey filed an appeal to the bankruptcy appellate panel, and then after it lost the Sixth Circuit appeal in one of those preceding cases, dismissed it with prejudice. So as a matter of law of the case, res judicata, the validity of Deutsche Bank's lien is confirmed. It's established and cannot be challenged here. Now, my friend on the other side has made a fairness point. Oh, we haven't had an opportunity to amend the claim. This was moved so fast. I think that takes this out of the context of the litigation that has been going on for 10 years in the Eastern District of Kentucky. She has filed repeated quiet title actions, two separate quiet title actions. There's been a declaratory judgment action, at least two appeals to the Sixth Circuit. She has known that her challenge and the debtors' challenge to the validity of Deutsche Bank's lien was in high doubt, and the Sixth Circuit last year has held that Deutsche Bank does have standing to foreclose. And now we have this adversary proceeding, and the order was entered, as I said, in February of 2015. So that's three months before the bankruptcy court dismissed the plan. So she knew at least for three months that this bankruptcy court considered this plan unconfirmable because her lien was valid. Deutsche Bank's lien was valid. So this claim of unfair surprise never got a chance really falls flat when you consider the litigation in its totality. And we still haven't heard the way that this could be fixed. There's speculation that maybe a third party could come in 10 years later. These proceedings have been going on for a decade now. The mortgage was signed in 2007. They defaulted in 2008, haven't made a single mortgage payment since 2008. And that's what I think, Your Honor, I hope doesn't get missed from the bankruptcy court's order, looking at the entirety of this litigation, both in the Eastern District and in the Sixth Circuit, which he lays out in his order dismissing adversary proceeding 14-5044. That's, I'll give you a record site here, looks like document number 26 in the 5044 adversary proceeding. He really puts it in context in that. The other thing that I would point out for the court is Deutsche Bank did join the motion to dismiss that the trustee filed. It's document number 96 in the record. Well, where your client stands, I see you're out of time. I'd like to have you answer a question. Your client basically stands in the position of the lien's been held valid. You just want to foreclose or get paid. I mean, it's one or the other that strikes me. Yes, sir. That's what we want. We hope this can be brought to finality so there's no doubt that we can move forward with the foreclosure in the Eastern District of Kentucky. And the issue of payment is whether it's up front or over terms that you can accept, it seems to me. Well, we're always open and willing to discuss those terms. Unfortunately, we haven't had much success with that, Your Honor. You never know. So thank you very much. We ask that you affirm. Thank you. Thank you. The court is now in recess.